# ORIGINAL

1 **ROSEN ✧ SABA, LLP**
   JAMES R. ROSEN, ESQ. (State Bar No. 119438)
2  jrosen@rosensaba.com
   9350 Wilshire Boulevard, Suite 250
3  Beverly Hills, California 90212
   Telephone:  (310) 285-1727
4  Facsimile:   (310) 285-1728

5 Attorneys for *Qui Tam* Plaintiff,
   David Cully

6

**FILED**

**MAY 2 2 2015**

CLERK, U.S. DISTR. OF COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**CASE UNSEALED PER ORDER OF COURT**

7

8 ## UNITED STATED DISTRICT COURT

9 ## SOUTHERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA
    ex. rel. DAVID CULLY,

12              Plaintiff/Relator,

13     vs.

14

15 SENTEK CONSULTING, INC., a
    California Corporation; ERIC BASU,
16 an individual; and DOES 1 through 10,

17              Defendants.

18

Case No.: 15 CV 1159-MMA(KSC)

**COMPLAINT FOR DAMAGES
AND OTHER RELIEF UNDER THE
FALSE CLAIMS ACT (31 U.S.C.
§3729 *et seq.*)**

**DEMAND FOR JURY TRIAL**

~~(FILED UNDER SEAL)~~

19
20
21
22
23
24
25
26
27
28

*(vertical left margin)* ROSEN ✧ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

PLAINTIFF'S COMPLAINT FOR DAMAGES

# I. <u>INTRODUCTION</u>

Plaintiff-Relator David Cully ("Plaintiff" or "Relator"), by and through his undersigned attorneys, ROSEN SABA, LLP, on behalf of the United States of America, alleges as follows for his *qui tam* Complaint against Defendants SENTEK CONSULTING, INC. ("Sentek"), ERIC BASU, and DOES 1-10 (collectively the "Defendants") based upon personal knowledge and relevant documents:

1.     This is an action brought on behalf of the United States of America by Plaintiff-Relator against Defendants pursuant to the *qui tam* provisions of the Civil False Claims Act, 31 U.S.C. §§3729-33 ( "FCA").

2.     Relator is an Original Source within the meaning of 31 U.S.C. §3730(e)(4)(B).  Relator possesses direct, independent, and personal knowledge of the information upon which the allegations herein are based.

3.     Sentek is a company that provides technology services to the United States Department of Defense ("DOD").  Eric Basu is the founder, President, and Chief Executive Officer of Sentek.

4.     Beginning in 2008, Sentek began receiving lucrative, cost-plus contracts from the DOD.  In the administration of these contracts, Defendants created and executed a scheme that resulted in the Government absorbing the costs of unrelated and unallowable expenses incurred by the company, its employees, and various third parties.  Defendants misclassified these items as allowable costs, and sought and received reimbursement from the Government in violation of various Federal Acquisition Regulations and the FCA.

5.     The scheme that has resulted in unallowable costs being reported to the Government began in at least 2008, and, as alleged more specifically below, includes but is not limited to the following:

      a.     Unallowable legal expenses;

      b.     Personal home renovation and improvement expenses;

ROSEN ✦ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

PLAINTIFF'S COMPLAINT FOR DAMAGES

ROSEN ✧ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

c.    Entertainment costs, including but not limited to, meals, lodging, rentals, language lessons;

d.    Costs of alcoholic beverages;

e.    Personal travel and vacation expenses;

f.    Unallowable compensation for personal services;

g.    Unallowable business development expenses;

h.    Unallowable personal financial planning and company valuations;

i.    Excessive rental expenses;

j.    Unallowable interest and other financial expenses;

k.    Building repairs;

l.    Unallowable public relations and advertising costs; and

m.    Costs of company-furnished automobiles for personal use.

6.    Defendants violated the FCA by:

a.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval from the Government in relation to contracts it has been granted;

b.    Defendants knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to the Government;

c.    Defendants conspired to commit a violation of the FCA;

d.    Defendants had possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivered, or caused to be delivered, less than all of that money or property;

e.    Defendants are authorized to make or deliver documents certifying receipts of property used, or to be used, by the Government and, intending to defraud the Government, made or delivered the

PLAINTIFF'S COMPLAINT FOR DAMAGES

ROSEN ✧ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

receipts without completely knowing that the information on the receipts was true; and

    f.    Defendants knowingly made, used, or caused to be made or used, false records and statements material to obligations to pay or transmit money to the Government, or knowingly concealed or knowingly and improperly avoided or decreased Defendants' obligations to pay or transmit money or property to the Government.

7.    The practices complained of herein are ongoing. As detailed below, Defendants' actions and omissions have caused many years of improper and false billings to the Government. As of the date of this Complaint, Sentek has received over $122,138,627 in federal contracts. Since receiving its first contract in 2008, Sentek has continued to receive a greater amount of federal contract money each year. In 2014, Sentek amassed $33,576,615 in federal contracts. Sentek continues to apply for new contracts while also renewing existing contracts on an annual basis.

8.    Following Relator's preliminary review of records in his possession, Relator estimates that damages caused to the Government by Defendants exceed $2.5 million dollars as of the date of this Complaint. However, pending a full and complete audit of Defendants' financial records, Plaintiff anticipates the extent of the damages to be much greater.

## II. JURISDICTION AND VENUE

9.    This Court has jurisdiction to entertain this *qui tam* action and has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1345, 28 U.S.C. §1367, and 31 U.S.C. §3732.

10.    Jurisdiction and venue are proper in this Court pursuant to the FCA because Relator's claims seek remedies on behalf of the United States for multiple

PLAINTIFF'S COMPLAINT FOR DAMAGES

ROSEN ✧ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

violations of 31 U.S.C. §3729, which occurred in this District, and because Defendant transacts business in this District.

11.     This Court has personal jurisdiction over the Defendant and venue is further appropriate in this District pursuant to 28 U.S.C. §§1391(b) and 31 U.S.C. §3732(a) because those sections authorize nationwide service of process and because the Defendant has minimum contacts with the United States. Moreover, Defendants can be found in, reside, and transact business in this District.  Sentek is incorporated in California, and its headquarters are located in the District.  The public funds at issue in this case were spent in the District and can be traced to property located in this District.

12.     Relator's claims are not based upon allegations or transactions which are the subject of a civil suit or administrative civil money penalty proceeding in which the Government is already a party, as enumerated in 31 U.S.C. §3730(e)(3).

13.     Under 31 U.S.C. §3730(e)(4)(A), there has been no statutorily relevant public disclosure of substantially the same "allegations or transactions" alleged in this Complaint.  Even to the extent there has been any such public disclosure, Relator meets the definition of an original source, as that term is defined under 31 U.S.C. §3730(e)(4)(B). Specifically, Relator voluntarily disclosed to the Government the information upon which allegations or transactions at issue in this Complaint are based prior to any purported public disclosure under 31 U.S.C. §§3730(e)(4)(A). Alternatively, Relator has knowledge that is independent of, and materially adds to, any purported publicly disclosed allegations or transactions, and Relator voluntarily provided the information to the Government before filing this Complaint. Relator therefore qualifies as an "original source" of the allegations in this Complaint such that the so-called public disclosure bar set forth at 31 U.S.C. §3730(e)(4) is inapplicable.

14.     Relator shall serve upon the Attorney General of the United States and the United States Attorney for the Southern District of California this *qui tam*

5

1  Complaint and a written disclosure summarizing the known material evidence and
2  information in the possession of Relator related to the original Complaint, in
3  accordance with the provisions of 31 U.S.C. §3730(b)(2). The disclosure statement is
4  supported by material evidence, and documentary evidence has been produced with
5  the disclosure. The documents referenced in the disclosure statement, and those
6  produced in connection therewith or subsequently, are incorporated herein by
7  reference.

8
9  ### III. THE PARTIES

10      15.    The real party in interest to this *qui tam* Complaint is the United States of
11  America.  Accordingly, at this time, Relator is pursuing his cause of action on behalf
12  of the United States on the claims set forth herein. *See, e.g.*, 31 U.S.C. §3730(b)(1).

13      16.    Plaintiff-Relator, David Cully, is a citizen of the County of San Diego,
14  state of California.  Relator holds a Master of Business Administration degree (MBA)
15  from San Diego State University and a Bachelor of Arts degree in economics from the
16  University of California at Los Angeles.  Relator is a 20-year veteran of the United
17  States Navy.

18      17.    In 2008, Relator was hired by Defendants to be Sentek's new Chief
19  Operating Officer ("COO").  Prior to his employment with Sentek, Relator was a
20  principal at Booz Allen Hamilton, Inc., a provider of management and technology
21  consultant services to the United States Government in defense, intelligence and civil
22  markets.    During his time as COO for Sentek, Relator secured for Sentek over $150
23  million in defense contracts from the United States Government.

24      18.    In July 2012, as a result of disagreements with Defendants regarding the
25  activities which are the basis of this action, Relator resigned his position and severed
26  all ties with Sentek.

27      19.    Relator is an original source of the information upon which the
28  allegations herein are based.

ROSEN ◆ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

PLAINTIFF'S COMPLAINT FOR DAMAGES

20.   Defendant Sentek Consulting, Inc. is a company that provides technology services to the United States Department of Defense ("DOD").   It is incorporated in the state of California, and its headquarters are located in San Diego, California.  Sentek also maintains an office in Charleston, South Carolina.

21.   Sentek conducts business under the alias "Sentek Global." However, all agreements with the DOD are with Sentek Consulting, Inc. as the contracting party.

22.   Defendant Eric Basu is the founder, President, and Chief Executive Officer of Defendant Sentek.  Defendant Basu a citizen of the state of California, and resides in the County of San Diego.

## IV. APPLICABLE FEDERAL LAWS AND REGULATIONS

### A. The False Claims Act

23.   Pursuant to the FCA, 31 U.S.C. §3729(a)(1)(A), "knowingly" presenting or causing to be presented to the United States any false or fraudulent claim for payment or approval is a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and a civil monetary penalty of between $5,500 and $11,000 per claim for claims made on or after September 29, 1999.

24.   Pursuant to the FCA, 31 U.S.C. §3729(a)(1)(B), "knowingly" making, using, or causing to be used or made, a false record or statement material to a false or fraudulent claim, is a violation of federal law for which the United States may recover three times the amount of the damages the Government sustains and a civil monetary penalty of between $5,500 and $11,000 per claim for claims made on or after September 29, 1999.

25.   Pursuant to the FCA, 31 U.S.C. §3729(a)(1)(C), any person, who conspires to commit a violation of the FCA, is liable for three times the amount of the

ROSEN ✧ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

7

ROSEN ◆ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

damages the Government sustains and a civil monetary penalty of between $5,500 and $11,000 per claim for claims made on or after September 29, 1999.

26.   Pursuant to the FCA, 31 U.S.C. §3729(a)(1)(D), any person, who has possession, custody, or control of property used, or to be used, by the Government, and knowingly delivers, or causes to be delivered, less than all of that money or property, is liable for three times the amount of the damages the Government sustains and a civil monetary penalty of between $5,500 and $11,000 per claim for claims made on or after September 29, 1999.

27.   Pursuant to the FCA, 31 U.S.C. §3729(a)(1)(E), any person authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true, is liable for three times the amount of the damages the Government sustains and a civil monetary penalty of between $5,500 and $11,000 per claim for claims made on or after September 29, 1999.

28.   Pursuant to the FCA, 31 U.S.C. §3729(a)(1)(G), any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government is liable for three times the amount of damages the Government sustains and a civil monetary penalty of between $5,500 and $11,000 per claim for claims made on or after September 29, 1999.

29.   The FCA defines a "claim" to include any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested. 31 U.S.C. §3729(b)(2).

30.   The FCA, 31 U.S.C. §3729(b)(1) provides that "(1) the terms 'knowing' and 'knowingly' – (A) mean that a person, with respect to information – (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud."

**B. Federal Acquisition Regulations**

31.   Total costs for a contract are defined in C.F.R. §31.201-1.  Allowable costs under the total cost are limited to those allocable costs which are allowable pursuant to Part 31 and applicable agency supplements.

32.   Allowable Costs under C.F.R. §31.201-2 are those that meet all of the following:  (1) reasonableness; (2) allocability; (3) standards promulgated by the Cost Accounting Standards Board, if applicable; otherwise, generally accepted accounting principles and practices appropriate to the circumstances; (4) terms of the contract; and (5) any limitations set forth in this subpart.

33.   Whether a cost is reasonable requires analysis under C.F.R. §31.201-3(b) which includes:  (1) whether it is the type of cost generally recognized as ordinary and necessary for the conduct of the contractor's business or the contract performance; (2) generally accepted sound business practices, arm's-length bargaining, and Federal and State laws and regulations; (3) the contractor's responsibilities to the Government, other customers, the owners of the business, employees, and the public at large; and (4) any significant deviations from the contractor's established practices.

34.   Whether a cost is allocable requires analysis under C.F.R. §31.201-4 which includes whether the cost (a) is incurred specifically for the contract; (b) benefits both the contract and other work, and can be distributed to them in reasonable proportion to the benefits received; or (c) is necessary to the overall operation of the business, although a direct relationship to any particular cost objective cannot be shown.

ROSEN ✦ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

ROSEN ✧ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

35.   <u>Professional and Consultant Service Costs</u> are unallowable under 48 C.F.R. §31.205-33(c)(4)  for "[s]ervices performed which are not consistent with the purpose and scope of the services contracted for or otherwise agreed to."

36.   For other <u>Professional and Consultant Service Costs</u> that are not explicitly permitted or barred, allowable costs are determined by a multi-factor analysis under  48 C.F.R. §31.205-33(d) which includes, among other factors:  (1) the nature and scope of the service rendered in relation to the service required; (2) the necessity of contracting for the service, considering the contractor's capability in the particular area; (3) the past pattern of acquiring such services and their costs, particularly in the years prior to the award of Government contracts; (4) the impact of Government contracts on the contractor's business; (5) whether the proportion of Government work to the contractor's total business is such as to influence the contractor in favor of incurring the cost, particularly when the services rendered are not of a continuing nature and have little relationship to work under Government contracts; (6) whether the service can be performed more economically by employment rather than by contracting; (7) the qualifications of the individual or concern rendering the service and the customary fee charged, especially on non-Government contracts; (8) adequacy of the contractual agreement for the service (e.g., description of the service, estimate of time required, rate of compensation, termination provisions).

37.   <u>Costs of Alcoholic Beverages</u> are specifically made unallowable pursuant to 48 C.F.R. §31.205-51.

38.   <u>Costs Related to Legal and Other Proceedings</u> are unallowable under 48 C.F.R. §31.205-47(f) if incurred in connection with (1) defense against Federal Government claims or appeals or the prosecution of claims or appeals against the Federal Government; (2) organization, reorganization, (including mergers and acquisitions) or resisting mergers and acquisitions (see also 48 C.F.R. §31.205-27); (3) defense of antitrust suits; (4) defense of suits brought by employees or ex-

10

ROSEN ✧ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

employees of the contractor under Section 2 of the Major Fraud Act of 1988, where the contractor was found liable or settled; (5) costs of legal, accounting, and consultant services and directly associated costs incurred in connection with the defense or prosecution of lawsuits or appeals between contractors arising from either (i) an agreement or contract concerning a teaming arrangement, a joint venture, or similar arrangement of shared interest; or (ii) dual sourcing, coproduction, or similar programs, are unallowable, except when (A) incurred as a result of compliance with specific terms and conditions of the contract or written instructions from the contracting officer, or (B) when agreed to in writing by the contracting officer; (6) patent infringement litigation, unless otherwise provided for in the contract; (7) representation of, or assistance to, individuals, groups, or legal entities which the contractor is not legally bound to provide, arising from an action where the participant was convicted of violation of a law or regulation or was found liable in a civil or administrative proceeding; and (8) protests of Federal Government solicitations or contract awards, or the defense against protests of such solicitations or contract awards, unless the costs of defending against a protest are incurred pursuant to a written request from the cognizant contracting officer.

39.   Organization Costs are unallowable under 48 C.F.R. §31.205-27(a) if they are expenditures in connection with (1) planning or executing the organization or reorganization of the corporate structure of a business, including mergers and acquisitions, (2) resisting or planning to resist the reorganization of the corporate structure of a business or a change in the controlling interest in the ownership of a business, and (3) raising capital (net worth plus long-term liabilities). Such expenditures include but are not limited to incorporation fees and costs of attorneys, accountants, brokers, promoters and organizers, management consultants and investment counselors, whether or not employees of the contractor. Unallowable reorganization costs include the cost of any change in the contractor's financial structure, excluding administrative costs of short-term borrowings for working

1  capital, resulting in alterations in the rights and interests of security holders, whether
2  or not additional capital is raised.

3      40.   Compensation for Personal Services requires special treatment for
4  certain individuals under 48 C.F.R. §31.205-27(a)(6).  These include A) owners of
5  closely held corporations, members of limited liability companies, partners, sole
6  proprietors, or members of their immediate families; and (B) persons who are
7  contractually committed to acquire a substantial financial interest in the contractor's
8  enterprise.   For these individuals, compensation must (A) be reasonable for the
9  personal services rendered; and (B) not be a distribution of profits (which is not an
10  allowable contract cost).  For owners of closely held companies, compensation in
11  excess of the costs that are deductible as compensation under the Internal Revenue
12  Code (26 U.S.C.) and regulations under it is unallowable.

13      41.   Entertainment Costs under 48 C.F.R. §31.205-14, including costs of
14  amusement, diversions, social activities, and any directly associated costs such as
15  tickets to shows or sports events, meals, lodging, rentals, transportation, and
16  gratuities, are unallowable. Costs made specifically unallowable under this cost
17  principle are not allowable under any other cost principle. Costs of membership in
18  social, dining, or country clubs or other organizations having the same purposes are
19  also unallowable, regardless of whether the cost is reported as taxable income to the
20  employees.

21      42.   Unallowable Public Relations and Advertising Costs include the
22  following under 48 C.F.R. §31.205-1: (1) all public relations and advertising costs,
23  whose primary purpose is to promote the sale of products or services by stimulating
24  interest in a product or product line (except for those costs made allowable under
25  §31.205-38(b)(5)), or by disseminating messages calling favorable attention to the
26  contractor for purposes of enhancing the company image to sell the company's
27  products or services; (2) all costs of trade shows and other special events which do
28  not contain a significant effort to promote the export sales of products normally sold

ROSEN ◆ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

12

ROSEN ◇ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

to the U.S. Government; (3) costs of sponsoring meetings, conventions, symposia, seminars, and other special events when the principal purpose of the event is other than dissemination of technical information or stimulation of production; (4) costs of ceremonies such as (i) corporate celebrations and (ii) new product announcements; (5) costs of promotional material, motion pictures, videotapes, brochures, handouts, magazines, and other media that are designed to call favorable attention to the contractor and its activities; (6) costs of souvenirs, models, imprinted clothing, buttons, and other mementos provided to customers or the public; and (7) costs of memberships in civic and community organizations.

43. <u>Interest and Other Financial Costs</u> that are unallowable under 48 C.F.R. §31.205-20 include interest on borrowings (however represented), bond discounts, costs of financing and refinancing capital (net worth plus long-term liabilities), legal and professional fees paid in connection with preparing prospectuses, and costs of preparing and issuing stock rights.

44. <u>Idle Facilities and Idle Capacity Costs</u> are unallowable under 48 C.F.R. §31.205-17, unless the facilities (1) are necessary to meet fluctuations in workload; or (2) were necessary when acquired and are now idle because of changes in requirements, production economies, reorganization, termination, or other causes, which could not have been reasonably foreseen. (Costs of idle facilities are allowable for a reasonable period, ordinarily not to exceed one year, depending upon the initiative taken to use, lease, or dispose of the idle facilities (however, *Cf.* §31.205-42)).

45. <u>Rental Costs</u> are allowable under 48 C.F.R. §31.205-36(b) for (1) rental costs under operating leases, to the extent that the rates are reasonable at the time of the lease decision, after consideration of (i) rental costs of comparable property, if any; (ii) market conditions in the area; (iii) the type, life expectancy, condition, and value of the property leased; (iv) alternatives available; and (v) other provisions of the agreement.

46.     <u>Bonuses and Incentive Compensation</u> are allowable under 48 C.F.R. §31.205-6(f)(1) only if (i) the awards are paid or accrued under an agreement entered into in good faith between the contractor and the employees before the services are rendered, or pursuant to an established plan or policy followed by the contractor so consistently as to imply, in effect, an agreement to make such payment; and (ii) the basis for the award is supported.

47.     <u>Costs of Company-Furnished Automobiles that Relate to Personal Use</u> by employees (including transportation to and from work) are unallowable under 48 C.F.R. §§31.205-6(m)(2) and 31.205-46(d) regardless of whether the cost is reported as taxable income to the employees.

48.     Under 48 C.F.R. §31.202-2(d), a contractor is responsible for <u>accounting for costs</u> appropriately and for <u>maintaining records</u>, including supporting documentation, adequate to demonstrate that costs claimed have been incurred, are allocable to the contract, and comply with applicable cost principles in this subpart and agency supplements. The contracting officer may disallow all or part of a claimed cost that is inadequately supported, including by the provision of cost receipts.

## GENERAL ALLEGATIONS

49.     At all relevant times herein, Defendant Sentek Consulting, Inc. was in the business of providing information technology and cybersecurity services to the United States Federal Government.

50.     At all relevant times herein, Defendant Eric Basu was the founder, President, and Chief Executive Officer of Defendant Sentek Consulting, Inc.

51.     At all relevant times herein, Defendant Sentek Consulting, Inc. has operated and done business with the Federal Government under the alias, Sentek Global.

52.     To date, Defendants have received over $122,138,627 in contracts from the Federal Government.

14

ROSEN ✧ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

53.   In requesting and receiving reimbursement from the Government for costs associated with the administration of the contracts, Defendants have created a complex and expansive scheme for recovering costs that are unallowable under Federal Acquisition Regulations.   In doing so, Defendants have defrauded the Government of millions of dollars.

54.   These unallowable costs include, but are not limited to:

a.   Excessive compensation for personal services related to unallowable advertising and marketing expenses paid to an entity known as "X Asia Marketing, Inc.," for which Defendant Eric Basu's ex-girlfriend provided ambiguously-described promotional services.

b.   Costs of alcoholic beverages at various restaurants, including, but not limited to, Mastro's Steakhouse and Mille Fleurs.

c.   Unallowable legal expenses for matters unrelated to the contracts at hand, including construction defect litigation concerning Defendant Basu's residence, and Defendant Basu's divorce proceedings, payable in both instances to the law firm, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

d.   Unallowable expenses made in conjunction with planning and revising the organization structure of the business, made payable to the firms, OSAS, Inc., TGG Accounting, and Vantage Point Advisors.

e.   Expenses claimed and reported, which relate to the enhancement and furnishing of Defendant Eric Basu's personal residence, including home furnishings, televisions, computers, sound systems, furniture, and entertainment.   The records in question reflect expenses made payable to Home Depot, Aaron Brothers,

ROSEN ✦ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

15

ROSEN ◆ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

Tip Top Meats, and other companies extraneous and unnecessary to the administration of Sentek's federal contracts.

    f.    Excessive, unreasonable, and unallocatable compensation for personal services claimed and paid to Defendant Eric Basu.

    g.    Excessive, unreasonable, and unallocatable compensation for personal services claimed and paid to Defendant Eric Basu's (1) ex-wife, (2) son, and (3) sister-in-law.

    h.    Personal travel, accommodations, expenses, and private language tutoring lessons in connection with personal vacations enjoyed by Defendant Eric Basu, his family members, and his ex-girlfriend to destinations including Aruba, Tokyo, Hong Kong, Paris, Vietnam, and the Philippines.

    i.    Entertainment costs for events held at the San Diego Civic Theatre unrelated to Sentek contracts.

    j.    Excessive, unreasonable, and unallowable rental costs, repairs, upkeep and capital improvements paid to Defendants' other corporate holdings, including Sentek Management and Nimitz Management, for real property leases unrelated to the contracts.

    k.    Interest, account maintenance fees and service charges for company credit cards and bank accounts.

    l.    Automobile leases, expenses, and maintenance costs for (1) Defendant Eric Basu, (2) his ex-wife, and (3) his son for their personal usage.

55.    While an employee and COO of Sentek, Relator internally reported and expressed grave concern with Defendants' fraudulent scheme. As a direct result of Defendants' refusal to remedy this situation to conform to federal laws, rules, and regulations and, instead, continuance of the scheme, Relator resigned his employment at Sentek.

16

56.     Upon information and belief, Relator believes that the scheme remains ongoing and continues to grow in proportion to the growth of Sentek and its contract revenues.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FEDERAL FALSE CLAIMS ACT
### 31 U.S.C. §3729(a)(1)(A)
#### (*Against All Defendants*)

57.     Plaintiff-Relator realleges and incorporates by reference all preceding paragraphs of this *qui tam* Complaint as though fully set forth herein.

58.     Through the acts described above, Defendants and their agents and employees, in reckless disregard for or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented or caused to be presented, and are still presenting or causing to be presented, to the United States Government false and fraudulent claims, records, and statements, in order to obtain reimbursement of unallowed costs, in direct violation of 31 U.S.C. §3729(a)(1)(A) and the previously referenced Federal Acquisition Regulations.

59.     As a result of Defendants' actions, as set forth above, the United States of America and has been, and may continue to be, severely damaged.

### COUNT II: VIOLATION OF THE FEDERAL FALSE CLAIMS ACT
### 31 U.S.C. §3729(a)(1)(B)
#### (*Against All Defendants*)

60.     Plaintiff-Relator realleges and incorporates by reference all preceding paragraphs of this *qui tam* Complaint as though fully set forth herein.

61.     Through the acts described above and otherwise, Defendants and their principals, agents and employees, in reckless disregard or deliberate ignorance of the

ROSEN ✦ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

17

truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements material to the payment of false or fraudulent claims, in direct violation of 31 U.S.C. §3729(a)(1)(B) and the previously referenced Federal Acquisition Regulations.

62. As a result of Defendants' actions, as set forth above, the United States of America has been, and may continue to be, severely damaged.

## COUNT III: VIOLATION OF THE FEDERAL FALSE CLAIMS ACT
## 31 U.S.C. §3729(a)(1)(C)
### (*Against All Defendants*)

63. Plaintiff-Relator realleges and incorporates by reference all preceding paragraphs of this *qui tam* Complaint as though fully set forth herein.

64. Through the acts described above and otherwise, Defendants and their principals, agents and employees, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly conspired to commit a violation of 31 U.S.C. §§3729(a)(1)(A), (B), (D), (E), (F), or (G) of the False Claims Act, in direct violation of 31 U.S.C. §3729(a)(1)(C) and the previously referenced Federal Acquisition Regulations.

65. Defendants and their co-conspirators committed overt acts in furtherance of the conspiracy described above.

66. As a result of Defendants' actions, as set forth above, the United States of America has been, and may continue to be, severely damaged.

///
///

ROSEN ✧ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

PLAINTIFF'S COMPLAINT FOR DAMAGES

ROSEN ✧ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

## COUNT IV: VIOLATION OF THE FEDERAL FALSE CLAIMS ACT

### 31 U.S.C. §3729 (a)(1)(D)

### (*Against All Defendants*)

67.    Plaintiff-Relator realleges and incorporates by reference all preceding paragraphs of this *qui tam* Complaint as though fully set forth herein.

68.    Defendants and their agents and employees, by committing the acts described in this *qui tam* Complaint and otherwise, obtained possession, custody, and/or control of property or money used, or to be used, by the United States Government.

69.    Defendants knowingly failed to return or deliver the Government's property or money, and have caused to be delivered less than all of the money or property, which properly belongs to the Government.

70.    By disguising, submitting and receiving payment upon improper requests for reimbursement, Defendants intentionally exercised dominion and control over the Government's money and property and seriously interfered with the Government's ability and right to use those specific funds elsewhere.

71.    Defendants have maintained exclusive dominion and control over the Government's money or property for over six years, resulting severe interference, inconvenience, and expense to the United States.

72.    As a result of Defendants' actions, as set forth above, the United States of America has been, and may continue to be, severely damaged.

## COUNT V: VIOLATION OF THE FEDERAL FALSE CLAIMS ACT

### 31 U.S.C. §3729 (a)(1)(E)

### (*Against All Defendants*)

73.    Plaintiff-Relator realleges and incorporates by reference all preceding paragraphs of this *qui tam* Complaint as though fully set forth herein.

19

74.     Defendants and their principals, agents and employees were authorized to make or deliver documents certifying receipt of property used, or to be used, by the Government, and, intending to defraud the Government, by committing the acts described in this *qui tam* Complaint and otherwise, made or delivered receipts without completely knowing that the information on the receipts were true.

75.     As a result of Defendants' actions, as set forth above, the United States of America has been, and may continue to be, severely damaged.

## COUNT VI: VIOLATION OF THE FEDERAL FALSE CLAIMS ACT
## 31 U.S.C. §3729(a)(1)(G)
### (*Against All Defendants*)

76.     Plaintiff-Relator realleges and incorporates by reference all preceding paragraphs of this *qui tam* Complaint as though fully set forth herein.

77.     Through the acts described above and otherwise, Defendants and their agents and employees knowingly made, used, or caused to be made or used, false records and statements material to obligations to pay or transmit money to the Government, or knowingly concealed, improperly avoided or decreased Defendants' obligations to pay money to the United States Government that Defendants improperly or fraudulently received. Defendants also failed to disclose to the Government material facts that would have resulted in substantial repayments by them to the Government in direct violation of 31 U.S.C. §3729(a)(1)(G).

78.     As a result of Defendants' actions, as set forth above, the United States of America has been, and may continue to be, severely damaged.

///

///

PLAINTIFF'S COMPLAINT FOR DAMAGES

## DEMANDS FOR RELIEF

**WHEREFORE, Relator, on behalf of the United States of America, demands judgment be entered against Defendants, ordering:**

1.      That Defendants be ordered to cease and desist from submitting or causing to be submitted any more false claims, or further violating 31 U.S.C. §3729 et seq.

2.      That judgment be entered in favor of the United States and Relator against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided by 31 U.S.C. §3729(a), plus a civil penalty of not less than Five Thousand Five Hundred and No/100 ($5,500.00) Dollars, and no more than Eleven Thousand and No/100 ($11,000.00) Dollars per claim, as provided by 31 U.S.C. §3729(a), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the scheme undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery.

3.      That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. §3729(d) of the False Claims Act and/or any other applicable provision of law;

4.      That Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by 31 U.S.C. §3729(d) and any other applicable provision of the law;

5.      That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

6.      That Relator reserves and maintains his right to participate and share in the proceeds of any alternative remedy designed to settle any claim(s) involving any of the allegations or conduct alleged herein; and

7.      That the United States and Relator be awarded such other and further relief as the Court may deem to be just and proper.

ROSEN ✧ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

21

## **DEMAND FOR JURY TRIAL**

8.     Relator hereby demands a trial by jury as to all issues.


Dated: May 26, 2015                                    Respectfully submitted,

                                                       ROSEN ✧ SABA, LLP

                                            By: _____
                                                       JAMES R. ROSEN, ESQ.
                                                       Attorney for *Qui Tam* Plaintiff,
                                                       David Cully

ROSEN ✧ SABA, LLP
9350 WILSHIRE BOULEVARD, SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

PLAINTIFF'S COMPLAINT FOR DAMAGES